Argued and submitted June 8; resubmitted In Banc December 2, 1992, reversed on
appeal; affirmed on cross-appeal May 19, reconsideration denied August 18, petition
for review denied November 16, 1993 (318 Or 61)

# STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

# RUBEN CARRILLO GONZALEZ,
*Respondent - Cross-Appellant.*

(90-1448; CA A69492)

852 P2d 851

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the opening brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem, and with him on the reply brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert E. Thomas, III, Molalla, argued the cause and filed the brief for respondent - cross-appellant.

RICHARDSON, C. J.

Edmonds, J., concurring in part; dissenting in part.

De Muniz, J., concurring in part; dissenting in part.

Warren, J., dissenting.

## RICHARDSON, C. J.

Defendant was charged with manslaughter in the second degree, ORS 163.125, driving under the influence of intoxicants, ORS 813.010, and reckless driving. ORS 811.140. The state appeals a pretrial order excluding evidence about defendant's blood alcohol content and his appearance when admitted to a hospital. Defendant cross-appeals from an order denying his motion to exclude the hospital records. We reverse on appeal and affirm on cross-appeal.

Defendant was involved in a motor vehicle accident that resulted in the death of another person. Defendant was injured in the accident and was taken to a hospital. A blood-alcohol test was done by the hospital, which showed an alcohol content of .12 percent. The state submitted the case to the grand jury. Part of the evidence before the grand jury was the hospital records, which included the results of defendant's blood alcohol test and a statement by one of the examining physicians, Dr. Grady, that defendant "appeared intoxicated."

Before trial, defendant moved to dismiss the indictment or, in the alternative, to exclude testimony derived from the hospital records because the state had failed to disclose, on the foot of the indictment, that the hospital records had been admitted before the grand jury, in violation of ORS 132.580(1). The state explained that it had not listed the hospital records or the custodian of the records on the indictment, because it had concluded that ORS 132.580 did not require the state to do so. The trial court denied defendant's motion to dismiss the indictment, but ruled that the failure to list the hospital records on the foot of the indictment violated ORS 132.580 and that the violation was not inadvertent, ORS 132.580(2)(a). The court concluded that the appropriate remedy was

"to bar trial testimony derived from the hospital records, specifically the testimony of the toxicologist Marlis Coleman as to defendant's blood alcohol and testimony of Dr. Ian Grady as to defendant's state of intoxication in the emergency room shortly after the accident."

 On appeal, the state argues that the trial court erred when it excluded the testimony, because ORS 132.580(1) does

not require that persons noted in the hospital records, who may be witnesses at trial, be noted on the indictment. Defendant responds that statements made by Coleman and Grady in the hospital records constitute "reports" under ORS 132.580(1) and ORS 132.320(2), and that ORS 132.580(1) requires their names to be listed.

ORS 132.580 provides:

"(1) When an indictment is found, the names of the witnesses examined before the grand jury that returned the indictment and the names of those whose reports were received by such grand jury pursuant to ORS 132.320(2) must be inserted at the foot of the indictment, or indorsed thereon, before it is filed. The indorsement shall show whether the witness gave testimony before the grand jury or filed a report.

"(2) A witness examined before the grand jury whose name is not indorsed on the indictment shall not be permitted to testify at trial without the consent of the defendant, unless the court finds that:

"(a) The name of the witness was omitted from the indictment by inadvertence; and

"(b) The name of the witness was furnished to the defendant by the state at least 10 days before trial; and

"(c) The defendant will not be prejudiced by the omission."

Subsection (1) requires only two things to be endorsed on the foot of the indictment: the names of the witnesses who were *examined* before the grand jury and the names of persons whose reports were submitted under ORS 132.320(2).[1] Coleman and Grady do not come under either of these categories. They were not persons whose reports were submitted pursuant to ORS 132.320(2), because hospital records are not "reports" as described in ORS 132.320(2).

---

[1] ORS 132.320(2) provides:

"A report or a copy of a report made by a physicist, chemist, medical examiner, physician, firearms identification expert, examiner of questioned documents, fingerprint technician, or an expert or technician in some comparable scientific or professional field, concerning the results of an examination, comparison or test performed by such person in connection with a case which is the subject of a grand jury proceeding, shall, when certified by such person as a report made by such person or as a true copy thereof, be received in evidence in the grand jury proceeding."

Coleman and Grady also were not witnesses examined before the grand jury. The plain meaning of the phrase "examined before the grand jury" is that the witness appeared and testified in person. The commentary to the proposed 1973 amendment to ORS 132.580 reflects that meaning:

> "The witness-name requirement would apply only to witnesses who testified before the grand jury that indicted the defendant." Commentary, *Proposed Oregon Criminal Code* 50, § 85 (1972).

Because Coleman and Grady did not appear and testify before the grand jury, their names were not required to be listed on the indictment. Consequently, there was no violation of ORS 132.580 and no need to impose sanctions.

The dissent nevertheless urges that the trial court properly excluded the testimony, because the state deliberately sought to avoid the intent of the statute and the remedy provided in ORS 132.580(2) was rendered meaningless.

■ We disagree with the dissent, because it imposes a common law rule of suppression that goes beyond the mandate of the statute and its expressly provided remedy. ORS 132.580 does not require that *evidence* presented to a grand jury be listed on the indictment, it only requires that the names of *witnesses* "examined before the grand jury" and the names of persons "whose reports were received" pursuant to ORS 132.320(2) be included in the indictment. Because the statute expressly limits its scope to those categories, we are not free to amend the statute by requiring evidence or other information to be noted on the foot of the indictment. *Royal Aloha Partners v. Real Estate Div.*, 59 Or App 564, 651 P2d 1350 (1982).

A similar analysis applies to the remedy provided in ORS 132.580(2). *See State v. Stout*, 305 Or 34, 749 P2d 1174 (1988). In *Stout*, the court held that an indictment cannot be attacked on the ground that the grand jury heard the wrong type of evidence. In that case, the defendant asked that the indictment be dismissed because the witnesses before the grand jury had no personal knowledge of the crime and their testimony recited inadmissible hearsay. The court held that the indictment could not be dismissed on that basis. In essence, the court concluded that it would not go behind the

indictment to determine its validity. Any challenge to an indictment would be limited by ORS 135.510, and that statute did not include the remedy of dismissal, because the grand jury had considered inadmissible hearsay evidence.

■ By parity of reasoning, we cannot go behind an indictment to exclude testimony or other evidence from the trial except as specifically allowed by statute. The only statute allowing such exclusion is ORS 132.580(2), and it restricts exclusion to a witness who was *examined* before the grand jury and whose name is not endorsed on the indictment. Here, the potential witnesses' statements were disclosed to the grand jury via the hospital records. That may have been inadmissible hearsay, *but see* OEC 803(6); it was not "witnesses examined before the grand jury." This is no different than the statements of potential witnesses disclosed to the grand jury by the police reports in *State v. Stout, supra.* The trial court erred in excluding the testimony.

■ On cross-appeal, defendant contends that the trial court erred when it denied his motion to suppress all of the hospital records. He argues that the state was required to follow the procedures provided in ORCP 55H[2] when it procured the hospital records for the grand jury proceeding.

The rules of civil procedure only govern civil actions and special proceedings, unless their applicability is otherwise extended by statute or rule. ORCP 1A. ORS 136.600 makes specific provisions of ORCP applicable to criminal proceedings:

> "The provisions of ORS 44.150 and ORCP 39 B. and 55 E. and G. apply in criminal actions, examinations and proceedings."

The state contends that, because ORS 136.600 does not mention ORCP 55H, the rule does not apply to criminal proceedings. Defendant argues that ORS 41.945 provides a separate statutory basis for applying ORCP 55H to criminal proceedings:

> "ORCP 55 H. appl[ies] in any proceedings in which testimony may be compelled."

---

[2] ORCP 55H outlines the procedure for obtaining a person's hospital records in a civil proceeding. We do not quote the rule because of its length.

Defendant reasons that, because testimony in a grand jury proceeding may be compelled, ORCP 55H applies to the state's procurement of the hospital records.

We decline to read ORS 41.945 as incorporating ORCP 55H into criminal proceedings. ORS 136.600 specifically incorporates those provisions of ORCP applicable to criminal proceedings. We interpret the express terms of a statute as reflective of legislative intent to exclude unmentioned terms. *Royal Aloha Partners v. Real Estate Div., supra*, 59 Or App at 568. The legislative context of the applicable statutes supports that conclusion. ORS 41.945, ORS 136.600 and ORCP 55H were amended by the same bill in 1979. Or Laws 1979, ch 284, §§ 78, 115 and 35. If the legislature had intended ORCP 55H to apply to criminal proceedings, it would have included the provision in ORS 136.600. ORCP 55H does not apply to criminal proceedings.

■ Alternatively, defendant argues that the state's use of a subpoena instead of a warrant to obtain the hospital records violates Article I, section 9, of the Oregon Constitution. He asserts that ORS 192.525 and ORS 192.530[3] create for the patient a reasonable expectation of privacy in hospital records.

---

[3] ORS 192.525 provides:

"The Legislative Assembly declares that it is the policy of the State of Oregon to protect both the right of an individual to have the medical history of the individual protected from disclosure to persons other than the health care provider and insurer of the individual who needs such information, and the right of an individual to review the medical records of that individual. It is recognized that both rights may be limited, but only to benefit the patient. These rights of confidentiality and full access must be protected by private and public institutions providing health care services and by private practitioners of the healing arts. The State of Oregon commits itself to fulfilling the objectives of this public policy for public providers of health care. Private practitioners of the healing arts and private institutions providing health care services are encouraged to adopt voluntary guidelines that will grant health care recipients access to their own medical records while preserving those records from unnecessary disclosure."

ORS 192.530 provides:

"The Health Division of the Department of Human Resources and those boards licensing the healing arts that have been established in the division shall assist private health care providers in this state to develop guidelines necessary to fulfill this state's policy of facilitating a patient's access to medical records referring to the patient and limiting disclosure, without the patient's consent, to persons other than the health care provider and insurer of the patient who needs such information. Such guidelines shall be reported to the Sixtieth Legislative Assembly."

■ Defendant's argument blurs the distinction between rights created by statute and those recognized by section 9. The statutes cited create a legislative policy of confidentiality for medical records created by third persons; they do not create constitutionally protected privacy or possessory interests. Furthermore, to prove a constitutional violation under Article I, section 9, defendant must demonstrate that the state significantly interfered with *his* privacy or possessory interests. *See State v. Kosta*, 304 Or 549, 553-54, 748 P2d 72 (1987). The records subpoenaed by the state were owned, made, kept and guarded by the hospital.[4] The state did not violate Article I, section 9, by using a subpoena to obtain the hospital records.[5]

Reversed on appeal; affirmed on cross-appeal.

**EDMONDS J.,** concurring in part; dissenting in part.

I agree with the majority that the trial court did not err when it denied defendant's motion to suppress the hospital records. I disagree with the majority's position that there was no violation of ORS 132.580 and that the trial court was without authority to impose a sanction for the state's purposeful omission of the name of the witness on the indictment through whom the hospital records were introduced in the grand jury hearing.

The parties stipulated that the grand jury considered the hospital records that contained the report of the results of defendant's blood alcohol test and of defendant's appearance when he arrived at the hospital. What the record does not disclose is whether the records were introduced into evidence at the hearing through the testimony of a witness or as a certified report under ORS 132.320(2)[1]. However, the

---

[4] This case is not like *State v. Tanner*, 304 Or 312, 745 P2d 757 (1987), where the defendant "entrusted" property to a third party as collateral for a loan.

[5] We do not address defendant's final argument, because it was not raised below.

[1] ORS 132.320(2) provides:

"A report or a copy of a report made by a physicist, chemist, medical examiner, physician, firearms identification expert, examiner of questioned documents, fingerprint technician, or an expert or technician in some comparable scientific or professional field, concerning the results of an examination, comparison or test performed by such person in connection with a case which is the subject of a grand jury proceeding, shall, when certified by such person as a report made by such person or as a true copy thereof, be received in evidence in the grand jury proceeding."

prosecutor implied that the records were introduced through a witness. He told the trial court:

"As to the omission of the names * * *, that doesn't have to be included on the foot of the indictment. That's not a witness that is going to be called. We believe that's a stat-ute[sic] exception. That's a policy that was explained to me in the office. It wasn't done by inadvertence."

On appeal, the state contends that:

"ORS 132.580(1) does not require that an indictment dis-close on its face that hospital records were considered by the grand jury, * * *."

The state has never contended that the hospital reports were introduced under ORS 132.320(2).[2] The state's argument ignores the requirement that evidence like hospital reports must be introduced into evidence through a witness and that the witness through whom the evidence is intro-duced must be named in the indictment. ORS 132.320(1) says that "the grand jury shall receive no other evidence than such as might be given on the trial of the person charged with the crime in question." The grand jury could have considered lawfully the hospital records only if they had been introduced after a witness laid a proper foundation for their admissibility under OEC 803(6). ORS 132.580 provides, in relevant part:

"(1) When an indictment is found, the names of the witnesses examined before the grand jury that returned the indictment * * * must be inserted at the foot of the indict-ment or indorsed thereon, * * *.

"(2) A witness examined before the grand jury whose name is not indorsed on the indictment shall not be permit-ted to testify at trial without the consent of the defendant unless the court finds that * * *."

When the state deliberately failed to list the name of the witness through whom the hospital records were introduced into the grand jury evidentiary record, it violated ORS 132.580.

The majority says that, because Coleman, the hospi-tal toxicologist, and Grady, the physician who saw defendant

---

[2] Also, the state does not contend that it complied with ORS 132.320(3) which allows the prosecutor to seek leave of the court to allow a witness to appear by affidavit.

when he was brought in, did not testify before the grand jury, "their names were not required to be listed on the indictment. Consequently, there was no violation of ORS 132.580 and no need to impose sanctions." 120 Or App at 253. The majority is only partially correct. The statute does not require the state to list the names of Coleman and Grady but it does require the state to list the name of the person through whom the records were offered.

Because the violation of ORS 132.580 occurred, the trial court was entitled to impose a sanction on the state. It ruled that a proper sanction was to exclude the testimony of Coleman about the blood alcohol test results and the testimony of Grady about defendant's appearance when he was admitted into the hospital. ORS 132.580(2) permits a trial court to order that a witness who testified before the grand jury not be allowed to testify at trial. That remedy is impotent under these circumstances. There was no witness named by the state through whom the records had been introduced. Moreover, the court was not authorized by ORS 132.580(2) to exclude the hospital records as an exhibit. It could only exclude the testimony of a witness. Neither Coleman or Grady testified before the grand jury but it is their statements in the hospital record that set out the facts that the state wanted before the grand jury. The issue is whether, in the light of the deliberate violation of ORS 132.580 by the state and these circumstances, the court was authorized to impose some other sanction that would serve as an appropriate deterrent to similar future conduct by the state.

The majority, relying on *State v. Stout*, 305 Or 34, 749 P2d 1174 (1988), holds that the trial court was limited to the remedy expressly authorized by ORS 132.580(2). It says

"we cannot go behind an indictment to exclude testimony or other evidence from the trial except as specifically allowed by statute. The only statute allowing such exclusion is ORS 132.580(2), and it restricts exclusion to a witness who was *examined* before the grand jury and whose name is not endorsed on the indictment. Here, the potential witnesses' statements were disclosed to the grand jury via the hospital records. That may have been inadmissible hearsay, *but see* OEC 803(6); it was not witnesses examined before the grand jury." 120 Or App at 254. (Emphasis in original.)

*State v. Stout, supra,* does not support the majority's position. At issue was whether an indictment must be quashed if it was based in part on hearsay evidence. The court held that an indictment could not be set aside except for statutory grounds which did not include the improper admission of hearsay evidence. Here, the court did not quash the indictment. It imposed a sanction for a statutory violation by excluding the testimony of witnesses, something the statute allowed it to do, had Coleman and Grady testified before the grand jury.

The *Stout* court also discussed the rule of *State v. McDonald*, 231 Or 24, 361 P2d 1001 (1961), *cert den* 370 US 903 (1962). In *McDonald*, an indictment was returned after the grand jury heard hearsay evidence. The state voluntarily dismissed the indictment. After a second hearing at which no hearsay evidence was presented, the same grand jury returned another indictment for the same crime. Defendant argued that the admission of the hearsay evidence at the first hearing influenced the return of the second indictment. The Supreme Court concluded that the provision of ORS 132.320 which required a grand jury to consider only evidence that would be admissible at trial was "admonitory in character only, not mandatory," and held that the fact that a grand jury may have been prejudiced by inadmissible hearsay evidence is not a ground for dismissal. 231 Or at 34.

In *Stout*, the court revisited *McDonald*. It said:

> "We do not reaffirm the *McDonald* court's language that compliance with ORS 132.320 is 'admonitory in character only, not mandatory.' That may have been only a poorly chosen way to say that noncompliance would not invalidate an indictment, *whatever other sanctions might be invoked.* It does not mean that prosecutors may use hearsay testimony before grand juries. The unofficial commentary to OEC 101(4)(b) makes plain that this also was the view of those who prepared the Oregon Evidence Code." 305 Or at 41. (Emphasis supplied.)

It is apparent that the *Stout* court recognized that other sanctions could be lawfully imposed to carry out the legislature's purpose in promulgating statutes about what evidence a grand jury could lawfully consider. If the majority

is correct, there is nothing to prevent the state from thumbing its nose at ORS 132.580 and continuing to perpetuate its policy of not listing the witnesses on the indictment through whom it introduces medical reports or other documentary evidence to a grand jury. Furthermore, under the majority's reasoning, the state can, with impunity, offer those reports without any witness laying the foundation for their admission in contravention of both ORS 132.320 and ORS 132.580.

A grand jury proceeding is a secret proceeding. By requiring the grand jury to list the names of the witnesses who appear before it on the foot of the indictment, the legislature provided a means by which an accused could be apprised as to the identity of his accusers. It is apparent from the language in ORS 132.580 that the legislature intended to give the trial court the discretion to impose a sanction in the event of a violation of the statute. It also must have been apparent to the trial court that the district attorney had a policy under which the prosecutor had acted and that the practice resulting from that policy would continue unless it put some "teeth" into the consequences for the violation. Because of the way in which the state sought to circumvent the intent of the legislature, the express remedy afforded by ORS 132.580(3) was meaningless. In the light of the mandates of ORS 132.320 and ORS 132.580, I would hold under the circumstances, that the trial court had implicit authority to sanction the state and that it did not abuse its discretion in imposing an alternative sanction that had meaning. Otherwise, when the issue is whether those statutes can be enforced, the trial court is a "paper tiger."

For these reasons, I dissent.

Riggs and Rossman, JJ., join in this opinion.

**De MUNIZ, J.,** concurring in part, dissenting in part.

In my view, the custodian of the hospital records should have been listed as a witness on the indictment. However, I believe that the reasoning in *State v. Stout*, 305 Or 34, 749 P2d 1174 (1988), mandates the majority's conclusion that the trial court's order excluding evidence beyond that of the testimony of the custodian is unlawful and should be

reversed. On the cross-appeal, I would reverse for the reasons stated by Judge Warren in his separate opinion.

Durham, J., joins in this opinion.

**WARREN, J.,** dissenting.

I agree with the majority that there was no violation of ORS 132.580 and no need to impose sanctions under that statute. Nevertheless, because I disagree with its conclusion that medical records do not come within the protection of Article I, section 9, of the Oregon Constitution, I dissent.

Under Article I, section 9, of the Oregon Constitution:

> "A search or seizure to obtain evidence of a crime is unconstitutional if no warrant authorized the search or seizure and there is no exigency that would obviate the need for a warrant." *State v. Campbell*, 306 Or 157, 162, 759 P2d 1040 (1988).

The state obtained defendant's medical records without a warrant, and no exigency obviated the need for one. Accordingly, if obtaining those records was a search or seizure, defendant's motion to suppress should have been allowed.

A search occurs when the challenged government conduct, "if engaged in wholly at the discretion of the government, will significantly impair 'the people's' freedom from scrutiny * * *." 306 Or at 171. Defendant challenges the state's unimpeded access to his medical records. Therefore, the question is whether the state's unfettered access to an individual's medical records significantly impairs "the people's" freedom from scrutiny.

The form of scrutiny that the people are to be free from is determined, in part, "by social and legal norms of behavior, such as trespass laws and conventions against eavesdropping." 306 Or at 170. The Oregon legislature has established, as a matter of public policy, that medical records are private. ORS 192.525 provides:

> "The Legislative Assembly declares that it is the policy of the State of Oregon to protect both the right of an individual to have the medical history of the individual protected from disclosure to persons other than the health care provider and insurer of the individual who needs such information, and

the right of an individual to review the medical records of that individual."[1]

Save for a specific guarantee in the Constitution, there could be no stronger expression of the right to be free from a particular form of scrutiny than a legislative enactment declaring that freedom to be the public policy of the state. Accordingly, the majority misses the target by declaring that individuals have no privacy interest in their medical records.

The cases stress that individuals can have a privacy interest in those things that they expose to public view. In *State v. Wacker*, 111 Or App 483, 488, 826 P2d 1019, *rev allowed* 314 Or 573 (1992), we held that the state could not use a nightscope to intrude into the privacy of a car parked in a lot accessible to the public, because "what a person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *See State v. Owczarzak*, 94 Or App 500, 766 P2d 399 (1988). Those cases make clear that exposing private information to one person does not mean that a privacy interest in that information vis-a-vis the state is forfeited. The dividing line between a protected privacy interest and no privacy interest is not based on whether someone could or did obtain the same information that the state seeks to obtain. Rather, the question is whether the government's conduct in obtaining that information significantly impairs "the people's" freedom from scrutiny. Allowing the government unfettered access to medical records crosses that line.

There is an additional danger lurking in the majority's opinion. Its rationale could be applied to support the warrantless seizure of numerous types of private records. Records kept by accountants, lawyers, stock brokers, psychotherapists, ministers or bankers would no longer be free from unfettered governmental scrutiny, unless the legislature enacts specific protections for those records. *See, e.g.*, ORS 192.570. That is not how Article I, section 9, is supposed to work.

---

[1] OEC 504-1 also expresses the policy of this state in protecting the privacy of medical records by creating a physician-patient privilege. That privilege extends to civil proceedings, where constitutional protections might not otherwise apply because of the lack of state action.

Because the state seized defendant's medical records without a warrant, the court erred in denying his motion to suppress.

I dissent.