Argued and submitted September 4, 1997, decision of the Court of Appeals reversed and case remanded to that court for further proceedings March 5, 1998

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## DAVID WENDELL FAIR, JR.,
*Respondent on Review.*

(CC 94-10-37301; CA A90430; SC S43900)

953 P2d 383

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the briefs were Theodore R. Kulongoski, former Attorney General, Hardy Myers, Attorney General, Virginia L. Linder, former Solicitor General, and Eleanor E. Wallace, Assistant Attorney General.

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause for respondent on review. With him on the brief was Sally L. Avera, Public Defender.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Graber, and Durham, Justices.**

GRABER, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Kulongoski, J., did not participate in the consideration or decision of this case.

## GRABER, J.

The issue before us is whether the trial court erred in denying defendant's first demurrer to the indictment that charged him with violating the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO), ORS 166.715 *et seq.* We hold that the trial court did not err and, accordingly, reverse the contrary decision of the Court of Appeals. *State v. Fair*, 145 Or App 96, 929 P2d 1012 (1996).

Defendant was convicted of racketeering in violation of ORS 166.720(3), which provides, in part:

"It is unlawful for any person * * * associated with[ ] any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity * * *."

Other sections supply pertinent definitions for the terms used in ORS 166.720(3). At the time of the charged conduct, ORS 166.715 (1993)[1] provided, in part:

"(2) 'Enterprise' includes any individual, sole proprietorship, partnership, corporation, business trust or other profit or nonprofit legal entity, and includes any union, association or group of individuals associated in fact although not a legal entity, and both illicit and licit enterprises and governmental and nongovernmental entities.

"* * * * *

"(4) 'Pattern of racketeering activity' means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents * * *.

"* * * * *

"(6) 'Racketeering activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:

---

[1] Since 1993, the legislature has amended the quoted definitions in some particulars, but none of those amendments is relevant to the disposition of this case.

"(a)   Any conduct that constitutes a crime, as defined in ORS 161.515, under any of the following provisions of the Oregon Revised Statutes:

"[List omitted.]"

An indictment charged defendant (as well as several other persons) with racketeering. The indictment alleged that, during a stated period of time, defendant knowingly, and while associated with

"an enterprise, to-wit: the Woodland Park Bloods, a street gang not a legal entity but an association in fact, partici-pate[d] directly or indirectly in said enterprise through a pattern of racketeering activity consisting of two or more incidents of racketeering activity described as follows * * *."

The indictment then went on to list the crimes of unlawful delivery of a controlled substance, unlawful possession of a controlled substance, unauthorized use of a vehicle, attempted murder, and attempted first-degree assault. The indictment described with particularity the date, place, and manner of committing each of those five predicate offenses. The delivery and possession allegations involved the same controlled substance, cocaine. The attempted murder and assault allegations involved the same date, the same accom-plice, the same victim (a member of a rival gang), and the same weapon (a handgun).

The racketeering count concluded with this para-graph:

"The above constituting at least two incidents of rack-eteering activity that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics including a nexus to the same enterprise and are not iso-lated incidents."

The sufficiency of that paragraph is the focus of this case.

Defendant demurred to the indictment on several grounds, first among them that the indictment "is not defi-nite and certain," ORS 135.630(6), because the quoted alle-gation of a "pattern" of racketeering activity is too conclusory. Specifically, defendant argued that facts demonstrating *par-ticular kinds* of similarities, distinguishing characteristics, or

nexus among predicate offenses must appear in the indictment.

The trial court disagreed, reasoning that the indictment tracks the statutory definition of "pattern of racketeering activity." Accordingly, the trial court denied defendant's first demurrer.

The Court of Appeals reversed. That court said that the statutory definition of "pattern" allows proof of several kinds of possible relationships that may exist among predicate offenses, that the relationship among the predicate offenses "is not self-evident" here, and that "the indictment's failure to allege the relationship renders it insufficiently specific to allow [defendant] to defend against the charge." *Fair*, 145 Or App at 102. The court then reversed and remanded with instructions to the trial court to allow the demurrer. *Id.* at 103. The state petitioned for review, and we allowed the petition.

■ An indictment must contain, in substance, a "statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." ORS 132.550(7). An indictment serves three main functions:

> "(1) to inform the defendant of the nature of the crime with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the defendant to avail himself of his conviction or acquittal thereof if he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction."

*State v. Cohen*, 289 Or 525, 529, 614 P2d 1156 (1980), *cited with approval in State v. Montez*, 309 Or 564, 596-97, 789 P2d 1352 (1990), *appeal after remand* 324 Or 343, 927 P2d 64 (1996), *cert den* 117 S Ct 1830 (1997). *See also* Or Const, Art I, § 11 (the accused has a right "to demand the nature and cause of the accusation against him").

■ Generally, an indictment is sufficient to serve those functions and to withstand a demurrer if it tracks the pertinent wording of the statute defining the crime. *See, e.g., Montez*, 309 Or at 597 ("An indictment in the language of the statute generally is sufficient."); *State v. Nussbaum*, 261 Or 87, 91, 491 P2d 1013 (1971) ("It has always been the general rule in Oregon that an indictment in the language of a statute is good on demurrer."); *State v. Tracy*, 246 Or 349, 354, 425 P2d 171 (1967) ("We have repeatedly held that an indictment in the language of a statute is good on demurrer."). Here, the challenged paragraph in the indictment contains the statutory definition of a pattern of racketeering activity, *verbatim* except for commas.

■ Of course, it also is true that "a statement of the particular circumstances of the crime is necessary in order to charge the defendant with having committed specific acts bringing him within the condemnation of the statute." *State v. Smith*, 182 Or 497, 502, 188 P2d 998 (1948). *See also State v. Burke et al.*, 126 Or 651, 676, 269 P 869, 270 P 756 (1928) ("An indictment for a statutory offense is sufficient if the crime be charged in the words of the statute * * * [so long as] the words of the statute directly and expressly inform the accused of the nature and cause of the accusation against him."). For example, in an indictment for burglary, the state must specify the crime that it alleges that the defendant intended to commit when entering the premises. *State v. Sanders*, 280 Or 685, 687, 572 P2d 1307 (1977). The precise question here is whether an indictment for racketeering that states the "particular circumstances" of the *enterprise* and the "particular circumstances" of *each of the predicate offenses also* must specify the "particular circumstances" of the state's theory or theories of *nexus*, instead of using the statutory definition of "pattern." We hold that the indictment need not do so.

In Oregon, an indictment may allege means of committing a crime in the alternative. *See, e.g.*, ORS 132.560-(1)(a) ("Where the offense may be committed by the use of different means, the charging instrument may allege the means in the alternative."); *State v. Boots*, 315 Or 572, 582 & n 1, 848 P2d 76 (1993) (Unis, J., dissenting) (the defendant was charged in a single-count indictment with two theories of

aggravated murder); *State v. Laundy*, 103 Or 443, 466-67, 204 P 958, 206 P 290 (1922) ("The general rule is that where a single offense may be committed by several means it may be charged in a single count to have been so committed, if the ways or means are not repugnant * * *. It is a generally recognized rule of criminal pleading that when an offense against a criminal statute may be committed in one or more of several ways specified by the statute, the indictment may in a single count charge the commission of the offense in any or all of the ways specified by the statute * * *.").

Had the indictment spelled out each of the six kinds of alternative relationships separately,[2] in the very words of the statute, defendant could not complain under his present theory that the indictment "is not definite and certain," ORS 135.630(6).[3] The mere fact that the indictment uses instead a summary paragraph, containing all six statutory alternatives, does not render it defective.

At its core, defendant's argument is that the charged crime is complex, making the indictment difficult to defend against. But complex is not the same as uncertain, and difficult is not the same as indefinite. Even if it is complex or difficult to defend against, an indictment may allege multiple theories of committing the same crime in the words of the statute defining the crime. The racketeering indictment in this case was sufficiently definite and certain to fulfill the constitutional and statutory functions that this court has identified.

It follows that the trial court did not err in denying defendant's first demurrer. We therefore reverse the decision

---

[2] ORS 166.715(4), defining "pattern of racketeering activity," provides that the predicate offenses must not be isolated and must have (1) the same or similar intents, (2) the same or similar results, (3) the same or similar accomplices, (4) the same or similar victims, (5) the same or similar methods of commission, or (6) another form of interrelationship "by distinguishing characteristics, including a nexus to the same enterprise."

[3] Or, taking a different approach, the indictment might have alleged that the predicate offenses of attempted murder and attempted assault had similar intents (physical harm or death to the victim) and methods of commission (handgun) and the same accomplice and victim; that the two drug offenses, involving possession and delivery of cocaine, had similar intents, results, and methods of commission; that all five predicate offenses had a nexus to the same enterprise, the associates of which committed similar crimes; and so on.

of the Court of Appeals and return the case to that court for further proceedings.

Defendant raised other assignments of error that the Court of Appeals did not reach. Ordinarily, we would simply remand the case to that court to consider the remaining issues. We are informed, however, that defendant fled the state after the Court of Appeals issued its opinion, which was favorable to him, but while another criminal case was pending against him. We instruct the Court of Appeals to determine whether defendant remains a fugitive at the time this matter returns to it. If so, the Court of Appeals shall dismiss the appeal. *See State v. Smith*, 312 Or 561, 822 P2d 1193 (1992) (when a criminal defendant is a fugitive from justice, review is dismissed). If not, the court shall consider defendant's remaining assignments of error.

The decision of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings.