Submitted January 28, affirmed September 16, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANDY LAWRENCE WATERS,
*Defendant-Appellant.*

Curry County Circuit Court
12CR0399; A153894

359 P3d 526

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

Defendant was charged with violating state water pollution laws by engaging in suction-dredge mining on the Rogue River without a permit. In a demurrer, defendant argued that the charging instrument failed to state an offense. After a stipulated facts trial following the trial court's denial of the demurrer, defendant was convicted of one count of second-degree unlawful water pollution, ORS 468B.050(1)(d) and ORS 468.943, and was sentenced to 36 months of probation. On appeal, defendant assigns error to the trial court's denial of his demurrer. For the reasons that follow, we conclude that the trial court correctly denied the demurrer, and we affirm the judgment.

The facts are undisputed. A federal law enforcement officer observed defendant at or near the Rogue River on two days in September 2011. On both occasions, defendant had a suction dredge, a gasoline-powered device used by miners to suction water and small particulates through a hose and discharge them back into the water source. A suction dredge creates turbidity in the water source. On the second day, defendant told the law enforcement officer that he had been using the dredge in the river. Defendant dredged 0.10 cubic yards of the river bed. Rules promulgated by the state Department of Environmental Quality (DEQ) require a person to obtain a National Pollutant Discharge Elimination System (NPDES) 700-PM permit to operate a suction dredge. Defendant did not have such a permit.

The state charged defendant by information with second-degree unlawful water pollution, alleging that defendant

> "did unlawfully and with criminal negligence violate [ORS] 468B.050 by operating an industrial operation without holding a permit from the Oregon Department of Environmental Quality, to wit: by operating a small suction dredge without a [NPDES] 700-PM permit, the operation of which would otherwise alter the physical, chemical, or biological properties of a water of the state in a manner not already authorized."

In a demurrer, defendant raised several arguments as to why the information failed to state an offense. The trial

court denied the demurrer. Defendant waived his right to a jury trial and was convicted after a stipulated facts trial. On appeal, his sole assignment of error is to the trial court's denial of the demurrer. Defendant's arguments, as we understand them, are that the charging instrument failed to state an offense because: (1) DEQ lacks the authority to issue the NPDES 700-PM permit that defendant failed to obtain, and (2) the charging instrument did not describe a "discharge" or "addition" into a water source.

We review a trial court's denial of a demurrer for legal error. *State v. Huckins*, 176 Or App 276, 281, 31 P3d 485 (2001). ORS 135.630(4) provides that a defendant "may demur to the accusatory instrument when it appears upon the face thereof *** [t]hat the facts stated do not constitute an offense[.]" We have repeatedly held that, in light of that language, a court "may consider only the information alleged in the indictment." *State v. Cervantes*, 232 Or App 567, 573, 223 P3d 425 (2009); *see also State v. Morgan*, 151 Or App 750, 755, 951 P2d 187 (1997), *rev den*, 327 Or 82 (1998) (demurrer "cannot be sustained on the basis of facts extrinsic to the indictment"); *State v. Barker*, 140 Or App 82, 84, 914 P2d 11, *rev den*, 323 Or 265 (1996) ("Defendant's argument about what he expects the state to present at trial is premature and does not provide a basis for sustaining a demurrer."); *State v. Durant*, 122 Or App 380, 382, 857 P2d 891 (1993) ("A defendant may not rely on facts extrinsic to the indictment to support his theory of invalidity.").

Thus, the state's charging instrument is generally sufficient to "withstand a demurrer if it tracks the pertinent wording of the statute defining the crime." *State v. Fair*, 326 Or 485, 490, 953 P2d 383 (1998). In this case, the state charged defendant with violating ORS 468.943, which provides that a person commits the crime of unlawful water pollution in the second degree "if the person with criminal negligence violates ORS Chapter 468B or any rule, standard, license, permit or order adopted or issued under ORS Chapter 468B." The charging instrument tracks the language of ORS 468.943 by alleging that defendant did "with criminal negligence violate [ORS] 468B.050." The instrument proceeds to allege that defendant *operat[ed] an industrial operation without holding a permit from the Oregon*

*Department of Environmental Quality*, to wit: by operating a small suction dredge without [an NPDES] 700-PM permit, *the operation of which would otherwise alter the physical, chemical, or biological properties of a water of the state in a manner not already authorized*" (emphasis added). The italicized language tracks the language in the underlying statute, ORS 468B.050.[1]

In short, the charging instrument contained all of the elements of the offense with which defendant was charged. In arguing that the charging instrument failed to state an offense, defendant contends that the particular permit that defendant allegedly failed to obtain, the NPDES 700-PM, is legally invalid because DEQ lacks the authority to issue it. Thus, defendant reasons, he cannot be penalized for failing to procure the permit. Defendant's argument is a nonsequitur. Even assuming the correctness of his assertion that DEQ may not lawfully issue an NPDES 700-PM permit, it does not follow that suction dredging without a permit is therefore lawful. ORS 468B.050's prohibition on engaging in unpermitted activities that have certain effects on the state's water does not affirmatively require the state to issue a permit. As pertinent to the charge against defendant, the material allegations are simply that he engaged in activity for which a permit was required, and he did not have one.[2]

---

[1] ORS 468B.050 provides, in pertinent part, as follows:

"(1) Except as provided in ORS 468B.053 or 468B.215, without holding a permit from the Director of the Department of Environmental Quality or the State Department of Agriculture, * * *, a person may not:

"* * * * *

"(d) Construct, install, operate or conduct any industrial, commercial, confined animal feeding operation or other establishment or activity or any extension or modification thereof or addition thereto, the operation or conduct of which would cause an increase in the discharge of wastes into the waters of the state or which would otherwise alter the physical, chemical or biological properties of any waters of the state in any manner not already lawfully authorized."

[2] Defendant's only response to that point is to argue that, if one cannot obtain a valid permit, then the state has effectively banned suction dredging, which would be contrary to the federal Mining Act. We reject that argument without written discussion. *See Kinross Copper Corp. v. State of Oregon*, 160 Or App 513, 525-26, 981 P2d 833, *adh'd to on recons*, 163 Or App 357 (1999), *rev den*, 330 Or 71, *cert den*, 531 US 960 (2000) (holding that the state did not effect a taking of a party's property when the takings claim was "predicated on the loss of a right" that the party "never possessed, namely, the 'right' to discharge mining wastes into the waters of the state").

Defendant also argues that the charging instrument failed to state an offense because suction dredging does not cause any "addition" or "discharge" into the water; rather, according to defendant, suction dredging "removes water and puts it back, without adding any substances or pollutants." The state argues that suction dredging does cause a "discharge" requiring an NPDES 700-PM permit. We need not resolve that question, as it is clear that the nature and consequences of suction dredging implicate factual matters that are extrinsic to the face of the charging instrument. Accordingly, the state is correct that a demurrer was not the appropriate procedural vehicle for defendant's legal theory. *Cervantes*, 232 Or App at 573. The trial court did not err in denying the demurrer.

Affirmed.