Argued and submitted January 21, 2014, affirmed April 19, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACOB MATTHEW MILLER,
*Defendant-Appellant.*

Coos County Circuit Court
11CR1154; A150972

395 P3d 584

Kali Montague, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Hadlock, Chief Judge, and DeVore, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## DUNCAN, P. J.

ORS 676.260(1) imposes a mandatory reporting duty on health care facilities under certain circumstances. A health care facility "shall notify" a law enforcement officer present at the facility investigating a motor vehicle accident if, immediately after the accident, the facility treats "a person reasonably believed to be the operator of a motor vehicle involved in the accident" and, in the course of treatment, tests the person's blood and discovers that the person's blood alcohol level exceeds .08 percent or that the blood contains a controlled substance.[1]

As part of defendant's treatment for injuries sustained in a single-vehicle accident, hospital staff drew and tested a sample of his blood that showed a blood alcohol content (BAC) of .333 percent. Acting pursuant to the requirements of ORS 676.260(1), hospital staff disclosed the BAC test result to a state trooper who was at the hospital to investigate the accident. Defendant was prosecuted for three driving-related offenses, and he moved to exclude evidence of the hospital's disclosure of his BAC test result to the trooper, arguing, among other things, that the disclosure violated his state and federal constitutional rights to privacy of his medical records. The trial court denied the motion. Defendant entered a conditional guilty plea and now appeals that denial. In light of defendant's arguments, we conclude that, under the circumstances, defendant had no protected privacy interest in his BAC test result under the Oregon Constitution or the United States Constitution. Because there was no constitutional violation, defendant

---

[1] ORS 676.260(1) provides:

"A health care facility that provides medical care immediately after a motor vehicle accident to a person reasonably believed to be the operator of a motor vehicle involved in the accident shall notify any law enforcement officer who is at the health care facility and is acting in an official capacity in relation to the motor vehicle accident if the health care facility becomes aware, as a result of any blood test performed in the course of that treatment, that:

"(a) The person's blood alcohol level meets or exceeds the percent specified in ORS 813.010; or

"(b) The person's blood contains a controlled substance, as defined in ORS 475.005."

ORS 813.010 specifies a blood alcohol level of .08 percent by weight.

was not entitled to suppression of evidence of his BAC test result. Consequently, we affirm.

## I. FACTS

In reviewing a trial court's denial of a motion to suppress, we review for legal error, deferring to the trial court's findings of fact when there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). We recite the pertinent facts, which are undisputed, in accordance with that standard. After a single-car accident, Trooper Dunlap responded to the scene. Defendant, the driver of the vehicle, had already been transported to the Bay Area Hospital for treatment of his injuries, and Dunlap went there. As he approached defendant's bed in the emergency room, Dunlap smelled alcohol and could hear defendant screaming profanities. Dunlap saw that defendant's eyes were bloodshot, glassy, and watery. Defendant's face was flushed and he had a dazed, "stuporous" expression. Dunlap suspected that defendant had been driving under the influence of intoxicants and requested defendant's consent to draw his blood to test for its alcohol content. Defendant refused.

As part of defendant's medical treatment, hospital staff had drawn a sample of his blood and tested it, ascertaining that his BAC was .333 percent. After defendant refused to consent to a blood draw, Dunlap did not seek a warrant for a blood draw. Nor did he ask hospital staff for the results of the blood test. However, pursuant to their duty under ORS 676.260(1), hospital staff verbally disclosed to Dunlap that defendant's BAC was .333 percent and Dunlap included that information in his police report.

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, reckless driving, ORS 811.140, and criminal mischief, ORS 164.354. Before trial, he moved to exclude evidence of the BAC test result because it had been obtained without a warrant. Defendant argued, among other things, that the hospital staff's disclosure of his BAC test result to Dunlap was "suppressible, as state action, under search and seizure analysis." After a hearing, the trial court denied defendant's motion, concluding, as relevant here, that the hospital's disclosure of

defendant's BAC test result to Dunlap did not violate defendant's constitutional rights because it did not constitute state action. Defendant entered a conditional guilty plea to DUII and reckless driving, and the trial court entered a judgment convicting him of those offenses. The criminal mischief charge was dismissed.

## II. ARGUMENTS ON APPEAL

On appeal, defendant contends that the trial court erred in denying his motion to exclude evidence of the disclosure of the BAC test result to Dunlap, asserting that the hospital's disclosure of that information to Dunlap without a warrant pursuant to ORS 676.260(1) was state action that violated his rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution to privacy of his medical records.[2] Defendant challenges only the hospital's disclosure of information—the BAC test result—to Dunlap; he does not challenge the blood draw or testing. He also does not dispute that the requirements of ORS 676.260(1) were met.

Thus, defendant contends that the hospital staff's disclosure of his BAC test result to Dunlap was a "search," for purposes of Article I, section 9, and the Fourth Amendment, and that no exception to the warrant requirement applied. Although the privacy interests that the two constitutions protect are defined differently, under either constitution, a "search" requires state action that invades a protected privacy interest. *State v. Newcomb*, 359 Or 756, 764, 375 P3d 434 (2016) ("For purposes of Article I, section 9, a search occurs only if governmental action invades 'a protected privacy interest.' *State v. Wacker*, 317 Or 419, 426, 856 P2d 1029 (1993)."); *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988) ("[T]he privacy protected by Article I, section 9, is not the privacy that one reasonably *expects* but the privacy to which one has a *right*." (Emphasis in original.)); *see also*

---

[2] Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

*United States v. Jacobsen,* 466 US 109, 113, 104 S Ct 1652, 80 L Ed 2d 85 (1984) (Fourth Amendment search occurs when governmental action infringes "an expectation of privacy that society is prepared to consider reasonable").

Defendant contends that the disclosure was state action because the hospital staff disclosed the information to Dunlap pursuant to ORS 676.260(1), a legislative mandate. He further contends that, under both Article I, section 9, and the Fourth Amendment, he had a constitutionally protected privacy interest in his medical records, including his BAC.

The state first responds that defendant failed to preserve the claim that he raises on appeal. We reject that argument without further discussion. On the merits, the state asserts, among other things, that defendant lacked a protected privacy interest in his BAC under either constitution. As explained below, given defendant's arguments, we agree. Accordingly, we need not, and do not, consider whether the fact that ORS 676.260(1) required the hospital staff to disclose defendant's BAC to law enforcement means that the disclosure constituted state action.

## III. ANALYSIS

A. *Article I, section 9*

We begin with defendant's argument under Article I, section 9, that he had a protected privacy interest in his BAC, as reflected in state statutes limiting the unauthorized disclosure of a person's medical records. *See* ORS 192.553(1)(a) ("It is the policy of the State of Oregon that an individual has *** [t]he right to have protected health information of the individual safeguarded from unlawful use or disclosure[.]"); ORS 192.558 (enumerating circumstances under which health care providers may disclose protected health information). Defendant acknowledges that, in *State v. Gonzalez,* 120 Or App 249, 852 P2d 851, *rev den,* 318 Or 61 (1993), we rejected the argument he raises, but he asserts that *Gonzalez* was plainly wrong and should be overruled. The state asserts, among other arguments, that we are bound by *Gonzalez.*

In *Gonzalez*, hospital staff drew the defendant's blood while treating him for injuries sustained in a motor vehicle accident resulting in the death of another person. A test of the blood showed a BAC of .12 percent, and the defendant was charged with manslaughter, DUII, and reckless driving. 120 Or App 249, 251. The state subpoenaed the hospital records showing the defendant's BAC, but the defendant successfully challenged the admission of the evidence at trial. The state appealed, asserting that the trial court had erred in excluding the evidence.

In reversing the trial court's ruling, we considered and rejected the defendant's argument that the state's use of a subpoena instead of a warrant to obtain the hospital records violated Article I, section 9. We expressly rejected the defendant's contention that statutes relating to the privacy of medical records and demonstrating a legislative policy of confidentiality for medical records created by third persons gave rise to a protected privacy interest in hospital records under Article I, section 9.[3] We held in *Gonzalez* that the state does not violate Article I, section 9, by obtaining a defendant's hospital records without a warrant. 120 Or App at 256 ("The statutes cited create a legislative policy of confidentiality for medical records created by third persons; they do not create constitutionally protected privacy or possessory interests.").[4]

---

[3] At the time that *Gonzalez* was decided, Oregon's provisions relating to medical record privacy were contained in *former* ORS 192.525 (1991), *repealed by* Or Laws 2003, ch 86, § 8, and *former* ORS 192.530 (1991), *repealed by* Or Laws 2003, ch 86, § 8. The parties agree that those provisions set out parameters for privacy of medical records that were more protective of patients' privacy than the ones now in effect.

[4] Our conclusion in *Gonzalez* rested, at least in part, on the proposition that, "to prove a constitutional violation under Article I, section 9, defendant must demonstrate that the state significantly interfered with *his* privacy or possessory interests. The records subpoenaed by the state were owned, made, kept and guarded by the hospital." *Gonzalez*, 120 Or App at 256 (emphasis in original). That is, the defendant had no right to privacy of information in records maintained by the hospital.

Applying the same principle, we recently held that a defendant had no protected privacy interest in his wife's bank records because they had been created by the bank—a third party—for business purposes. *State v. Ghim*, 267 Or App 435, 441-42, 340 P3d 753 (2014). In affirming our holding on a different ground, the Supreme Court expressly reserved "for another day the question whether and in what circumstances a defendant will have a protected privacy interest in information that a third party maintains, a question that can arise in differing

As noted above, defendant acknowledges that *Gonzalez* is dispositive of his state constitutional challenge, but he asserts that the case was wrongly decided and asks that it be overruled.[5] However, defendant has not persuaded us that our conclusion in *Gonzalez* was plainly wrong. *See State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005) (under principle of *stare decisis*, the party seeking to change a precedent must assume responsibility for affirmatively persuading the Supreme Court that it should abandon that precedent); *State v. Civil*, 283 Or App 395, 415-17, 388 P3d 1185 (2017) (discussing requirement that precedent be "plainly wrong" in order to be overruled). In fact, we have recently relied on it. *See State v. Ghim*, 267 Or App 435, 441-42, 340 P3d 753 (2014), *aff'd on different grounds*, 360 Or 425, 381 P3d 789 (2016) (citing *Gonzalez* for rule that a person does not have a protected privacy interest under Article I, section 9, in third-party records generated for business purposes); *see also State v. Cromb*, 220 Or App 315, 326, 185 P3d 1120, *rev den*, 345 Or 381 (2008) (relying on holding in *Gonzalez*). Accordingly, we reject defendant's invitation to overrule *Gonzalez* and consequently conclude that, even assuming that the hospital staff's disclosure of defendant's BAC to Dunlap pursuant to ORS 676.260(1) was

---

factual circumstances which can have a bearing on its resolution." *State v. Ghim*, 360 Or 425, 444, 381 P3d 789 (2016); *see also id.* at 436 ("The question whether a person has a constitutionally protected privacy interest in information that a third party collects and maintains for its own use has arisen with increasing frequency, driven in large part by the ability that computers provide to store, aggregate, and analyze vast amounts of data." (Citing, *inter alia*, *United States v. Jones*, 565 US 400, 417, 132 S Ct 945, 181 L Ed 2d 911 (2012) (Sotomayor, J., concurring) (noting that an approach to the Fourth Amendment based on "the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties" "is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks").). To the extent that those comments suggest that our broad application of the third-party doctrine in *Gonzalez* may not be the last word on the subject, defendant's arguments are not addressed to the specific factual circumstances in this case, and accordingly, as we state in the text, defendant has not convinced us that *Gonzalez* is plainly wrong.

[5] Defendant does not contend that this case is distinguishable from *Gonzalez* on the ground that, there, the state obtained the defendant's BAC by subpoenaing his medical records, whereas here, the state obtained defendant's BAC when hospital staff, acting pursuant to ORS 676.260(1), disclosed the information to Dunlap. For purposes of our analysis here—that is, assuming, without deciding, that the disclosure was state action—any distinction is not obvious to us.

state action, it did not violate a privacy interest protected by Article I, section 9.

## B. *Fourth Amendment*

We turn to defendant's argument that he had a reasonable expectation of privacy in his BAC under the Fourth Amendment. A "Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 US 27, 33, 121 S Ct 2038, 150 L Ed 2d 94 (2001). Defendant asserts that he expressed his subjective expectation of privacy in his BAC by refusing Dunlap's request for consent to draw his blood. Further, relying on *Ferguson v. City of Charleston*, 532 US 67, 121 S Ct 1281, 149 L Ed 2d 205 (2001), and other Supreme Court cases, and citing state and federal medical record privacy laws, he contends that his expectation that the hospital's record of his BAC would remain private was reasonable.[6] The state responds that, in light of ORS 676.260(1), defendant's subjective expectation of privacy in the results of the blood alcohol test administered by the hospital staff for treatment purposes was not reasonable.

---

[6] Defendant argues that the Supreme Court recognized relevant expectations of privacy in *Schmerber v. California*, 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966), *Skinner v. Railway Labor Executives' Ass'n*, 489 US 602, 109 S Ct 1402, 103 L Ed 2d 639 (1989), and *Missouri v. McNeely*, ___ US ___, ___, 133 S Ct 1552, 185 L Ed 2d 696 (2013). In *Schmerber*, the Supreme Court held that a person has a reasonable expectation of privacy in his or her blood; that is, the extraction of blood by a state actor without consent is a search under the Fourth Amendment. 384 US at 767. In *Skinner*, the Court reiterated that holding, explaining that, "[i]n light of our society's concern for the security of one's person, it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable." 489 US at 616 (citation omitted). In light of the same concerns—concerns about "bodily integrity"—the Court held that the subsequent testing of blood is a further invasion of the subject's privacy. 489 US at 616, 617. In *McNeely*, the Court again held that an unconsented blood draw—"a compelled physical intrusion beneath McNeely's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation"—was a search. 133 S Ct at 1558.

As the Court emphasized, those cases involved compelled—that is, nonconsensual—blood draws. Here, defendant does not argue that he did not consent to the blood draw as part of his medical treatment. Accordingly, while those cases provide relevant context, they do not answer the question presented here, namely, whether a person who consents to a blood draw and testing by medical personnel retains a reasonable expectation of privacy in the information generated by the testing—the test result. Accordingly, we do not address *Schmerber*, *Skinner*, or *McNeely* further.

We begin with defendant's argument that, in *Ferguson*, the Court recognized a privacy interest in the results of diagnostic tests performed in a hospital and that that privacy interest also applies in this case. In *Ferguson*, pursuant to a policy jointly developed by hospital staff and law enforcement officials, state hospital staff tested pregnant patients' urine for drugs. The tests were designed and conducted for the purpose of obtaining evidence of criminal conduct by the patients, not for medical treatment purposes. The resulting evidence was turned over to the police for use in criminal prosecutions. 532 US at 71-73. A group of patients challenged the warrantless taking and testing of their urine, arguing that the hospital staff's conduct constituted suspicionless searches under the Fourth Amendment. *Id.* at 73-75.

Without extended discussion, the majority held that the urine tests—conducted, as they were, by state hospital employees for law enforcement purposes—were searches for Fourth Amendment purposes.[7] 532 US at 76. Then the majority considered the issue that the parties disputed: whether the warrantless searches were nevertheless permissible under the special needs doctrine. *See* 532 US at 74 n 7 (describing special needs exception to the Fourth Amendment's warrant requirement).

In the course of distinguishing the case from earlier cases in which the Court had held that the special needs doctrine justified warrantless searches, the Court noted that the invasion of privacy resulting from the testing of the patients' urine was greater than the invasions in previous special needs cases: "The reasonable expectation of privacy

---

[7] The dissent asserted that what the patients objected to was not the taking or testing of the urine, but, instead, the disclosure of the test results to the police. 532 US at 92 (Scalia, J., dissenting). The disclosure, the dissent asserted, "is obviously not a search"; instead, in the dissent's view, at most, it was a derivative use of information discovered through a search. *Id.* In response, the majority noted that, in previous cases, the Court had "routinely treated urine screens taken by state agents as searches within the meaning of the Fourth Amendment even though the results were not reported to the police." 532 US at 76 n 9. The majority also noted that the respondents did not contend "that the tests were not searches." *Id.* Thus, the majority framed the question as whether the state-hospital employees conducted searches when they took and tested patients' blood and then turned over the results to law enforcement, all for law enforcement purposes.

enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." 532 US at 78. In a footnote after a citation in support of that sentence, the Court distinguished situations in which incriminating information is turned over to law enforcement after it is discovered in the course of treatment by someone who has a statutory duty to report it:

> "There are some circumstances in which state hospital employees, like other citizens, may have a duty to provide law enforcement officials with evidence of criminal conduct acquired in the course of routine treatment, see, *e.g.*, SC Code Ann § 20-7-510 (2000) (physicians and nurses required to report to child welfare agency or law enforcement authority 'when in the person's professional capacity the person' receives information that a child has been abused or neglected). While the existence of such laws might lead a patient to expect that members of the hospital staff might turn over evidence acquired in the course of treatment to which the patient had consented, they surely would not lead a patient to anticipate that hospital staff would intentionally set out to obtain incriminating evidence from their patients for law enforcement purposes."

532 US at 78 n 13. Thus, the Court indicated that a hospital patient has a reasonable expectation of privacy in the results of diagnostic tests, but then limited that statement by suggesting that state statutes imposing a "duty to provide law enforcement officials with evidence of criminal conduct acquired in the course of routine treatment" would narrow that expectation of privacy.

Later in the opinion, the majority again addressed, and distinguished, mandatory reporting statutes. The Court explained that the fact that the policy at issue was created for the purpose of using "law enforcement to coerce the patients into substance abuse treatment" "distinguishes this case from circumstances in which physicians or psychologists, in the course of ordinary medical procedures aimed at helping the patient herself, come across information that under rules of law or ethics is subject to reporting requirements." *Id.* at 80-81. Such reporting requirements, it explained "are simply not in issue here." *Id.* at 81 n 18.

The majority assumed, for purposes of its review, that the patients had not given "informed consent" to the taking, testing, and disclosure of the test results to the police. 532 US at 76. The dissent took issue with the majority's assumption that consent—at least to the testing or disclosure to the police—was necessary. 532 US at 93 (Scalia, J., dissenting). The dissent asserted that, under the Court's case law, "using lawfully (but deceivingly) obtained material for purposes other than those represented, and giving that material or information derived from it to the police, is not unconstitutional." *Id.* at 94 (citing *Hoffa v. United States*, 385 US 293, 87 S Ct 408, 17 L Ed 2d 374 (1966)). The dissent contended that the majority was holding, incorrectly, that "material which a person voluntarily entrusts to someone else cannot be given by that person to the police, and used for whatever evidence it may contain." *Id.* at 95.

At the end of the opinion, the majority emphasized that the Fourth Amendment did not prohibit the program at issue (in the absence of informed consent) merely because state hospital employees tested the patients' blood and shared the results with law enforcement. Instead, the majority held, the program violated the Fourth Amendment because state hospital employees carried it out for the specific purpose of obtaining incriminating evidence from patients:

> "While state hospital employees, like other citizens, may have a duty to provide the police with evidence of criminal conduct that they inadvertently acquire in the course of routine treatment, when they undertake to obtain such evidence from their patients *for the specific purpose of incriminating those patients*, they have a special obligation to make sure that the patients are fully informed about their constitutional rights, as standards of knowing waiver require."

532 US at 84-85 (emphasis in original).

In an attached footnote, the majority responded to the dissent's discussion of the constitutionality of third parties turning incriminating material over to the police. *Id.* at 85 n 24. The majority disagreed with the dissent's contention that its holding would generally bar police from using

evidence that a defendant had consensually disclosed to a third party. In distinguishing the program at issue from a traditional third-party disclosure situation, the Court reemphasized that the reason for its holding was that the purpose of the hospital's policy and testing program was to collect evidence for law enforcement purposes, not merely to conduct medical treatment:

> "We do not address a case in which doctors independently complied with reporting requirements. Rather, as we point out above, in this case, medical personnel used [certain criteria] to collect evidence for law enforcement purposes, and law enforcement officers were extensively involved in the initiation, design, and implementation of the program. In such circumstances, the Fourth Amendment's general prohibition against nonconsensual, warrantless, and suspicionless searches applies in the absence of consent."

*Id.*

Thus, as we understand it, the majority concluded that cases allowing third parties to use "lawfully (but deceivingly) obtained material for purposes other than those represented," including turning such material over to the police, did not apply to the program at issue because the extensive involvement of law enforcement in the hospital's policy and procedures made the program into a law enforcement program masquerading as a medical treatment program. 532 US at 94 (Scalia, J., dissenting); *see* 532 US at 81-82 (describing extensive law enforcement involvement in both creation of the policy and its "day-to-day administration"). Under those narrow circumstances, the Court concluded, "the Fourth Amendment's general prohibition against nonconsensual, warrantless, and suspicionless searches applies in the absence of [informed] consent." *Id.* at 85 n 24; *see also id.* at 85 ("[W]hen [state hospital employees] undertake to obtain * * * evidence [of criminal conduct] from their patients *for the specific purpose of incriminating those patients*, they have a special obligation to make sure that the patients are fully informed about their constitutional rights, as standards of knowing waiver require." (Emphasis in original.)).

Here, the trial court found, and it is undisputed on appeal, that hospital staff took and tested defendant's

blood for medical purposes. That fact distinguishes the situation here from the one in *Ferguson*, where, as the majority repeatedly noted, the patients' blood was taken and tested with the specific goal of obtaining evidence to incriminate the patients. Instead, the situation here is of the type that the *Ferguson* majority repeatedly explained that it was not addressing: This is a case "in which [medical personnel], in the course of ordinary medical procedures aimed at helping the patient [him]self, come across information that under rules of law or ethics is subject to reporting requirements." *Id.* at 80-81; *see also id.* at 81 n 18 (such reporting requirements "are simply not in issue [in *Ferguson*]"). Thus, *Ferguson*'s holding—that the Fourth Amendment prohibits state-actor hospital staff, acting with the specific purpose of collecting evidence to incriminate patients, from taking patients' urine, testing it for drugs, and disclosing the test results to the police, in the absence of informed consent—does not apply to the situation before us.

The Court in *Ferguson* did state that "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." 532 US at 78. However, although the Court may have recognized a general expectation of privacy in medical test results, it also noted that state statutes imposing "dut[ies] to provide law enforcement officials with evidence of criminal conduct acquired in the course of routine treatment" "might lead a patient to expect that members of the hospital staff might turn over evidence acquired in the course of treatment to which the patient had consented." 532 US at 78 n 13. That is, the existence of mandatory reporting statutes suggests that society does not accept as reasonable an expectation of privacy in information subject to mandatory reporting.

There may be a limit on how much the acknowledged expectation of privacy in the results of medical tests can be eroded by the enactment of mandatory reporting statutes. *See generally* Wendy K. Mariner, *Reconsidering Constitutional Protection for Health Information Privacy*, 18 U Pa J Const L 975, 976 (2016) (noting that state mandatory

reporting laws require disclosure by physicians, hospitals, laboratories, and pharmacies of vast amounts of individually identifiable health information). However, as explained below, defendant's categorical arguments in this case do not raise that question, and, accordingly, we need not, and do not, answer it here.

In arguing that he had a reasonable expectation of privacy in his BAC test result, defendant argues that "state and federal medical privacy laws indicate that, in general, a patient has an expectation that a health care provider's information about the patient's condition will remain private." (Citing ORS 192.553; ORS 192.558; 45 CFR parts 160 and 164.) As the state points out, however, the laws defendant cites all allow disclosure of medical information under the circumstances presented here. *See* ORS 192.558(2)(b) (health care provider may disclose protected health information without consent "[a]s otherwise permitted or required by state or federal law or by order of the court"); 45 CFR § 164.512(f)(1)(i) (allowing disclosure "[a]s required by law"); 45 CFR § 164.512(f)(6) (allowing disclosure to alert law enforcement of the "commission and nature of a crime").

Defendant does not explain, and we do not perceive, why our evaluation of a reasonable expectation of privacy should be guided by state and federal privacy laws in general, without considering that those privacy laws allow disclosure as required by other laws and that ORS 676.260(1) requires hospitals to provide a patient's BAC *to* law enforcement under circumstances suggesting that the patient has driven under the influence of intoxicants. *See Ferguson*, 532 US at 78 n 13 (existence of mandatory reporting statutes may "lead a patient to expect that members of the hospital staff might turn over evidence acquired in the course of treatment to which the patient had consented"). That is, although defendant argues categorically—based on *Ferguson* and medical privacy statutes—that he has an expectation of privacy in his medical records in general, he has not addressed why ORS 676.260(1) does not eliminate that expectation of privacy in his BAC test result under the limited circumstances addressed by the statute. We decline to address that question in the absence of argument.

## IV. CONCLUSION

Thus, assuming, without deciding, that the hospital staff's disclosure of defendant's BAC test result pursuant to ORS 676.260(1) made the staff member an agent of the state with respect to that action, we conclude, based on defendant's arguments, that the act of disclosing the test result did not implicate a protected privacy interest under either Article I, section 9, or the Fourth Amendment. Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.