Argued and submitted February 28; conviction on Count 1 reversed and remanded, remanded for resentencing, otherwise affirmed August 10; petition for review denied December 15, 2022 (370 Or 602)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# MICHAEL JOHN HOFFMAN,
*Defendant-Appellant.*

## Washington County Circuit Court
19CR35185; A173684

515 P3d 912

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). On appeal, he asserts three assignments of error. First, he assigns error to the trial court's grant of the state's motion for a postponement of the trial. Second, he assigns error to the denial of his motion to suppress evidence of his blood-alcohol test results (medical blood draw), arguing that the hospital staff's disclosure of those results in compliance with ORS 676.260 infringed on his Fourth Amendment privacy interests. Third, he challenges the denial of his motion *in limine* to exclude the medical blood draw evidence, contending that the state did not establish an adequate chain of custody. *Held*: The trial court did not abuse its discretion in granting the state's motion for a continuance. The trial court did, however, err in denying defendant's motion *in limine* to exclude the medical blood draw based on defendant's objection to the inadequate chain of custody, which was not harmless with respect to the DUII conviction. Finally, as explained in *State v. Miller*, 284 Or App 818, 395 P3d 584, *vac'd*, 362 Or 300, 408 P3d 1079 (2017), which controls in this case, defendant does not have a privacy interest in his blood-alcohol test results under the Fourth Amendment, and the trial court did not err in denying defendant's motion to suppress on that basis.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

Donald R. Letourneau, Senior Judge.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.

**HELLMAN, J.**

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). ORS 813.010(4). On appeal, he asserts three assignments of error. First, he assigns error to the trial court's grant of the state's motion for a postponement of the trial. Second, he assigns error to the denial of his motion to suppress evidence of his blood-alcohol test results (medical blood draw), arguing that the hospital staff's disclosure of those results in compliance with ORS 676.260 infringed on his Fourth Amendment privacy interests. Third, he challenges the denial of his motion *in limine* to exclude the medical blood draw evidence, contending that the state did not establish an adequate chain of custody.

For the reasons below, we conclude that defendant's first assignment of error is unpreserved in part and that the trial court did not otherwise abuse its discretion in granting the state's request for a postponement. As to defendant's third assignment of error, we accept the state's concession that it did not lay an adequate foundation for the admission of the medical records containing defendant's blood-alcohol level. Because the issue raised in defendant's second assignment of error regarding the Fourth Amendment is likely to arise on remand, we resolve that issue and conclude that defendant's argument is foreclosed by our decision in *State v. Fincher*, 303 Or App 165, 166, 462 P3d 780 (2020), *rev'd in part on other grounds*, 368 Or 560, 494 P3d 927 (2021) (readopting *State v. Miller*, 284 Or App 818, 395 P3d 584, *vac'd*, 362 Or 300, 408 P3d 1079 (2017)), in which we reaffirmed that individuals do not have an expectation of privacy under the Fourth Amendment in blood-alcohol test results under the limited circumstances described by ORS 676.260. We therefore reverse and remand for further proceedings.

## BACKGROUND FACTS

The relevant facts are largely undisputed. Defendant was riding his motorcycle when he was involved in a car crash. He was taken to the hospital for treatment, where hospital staff performed a blood test in the course of providing medical care (medical blood draw). When Officer Welter arrived at the hospital about an hour and a half later to

speak with defendant, a nurse informed her that the medical blood draw results showed that defendant had a blood alcohol content (BAC) of 0.257 percent. Officer Welter then spoke to defendant in his hospital room, where he consented to a second blood draw (implied-consent blood draw).

Defendant was charged with DUII (Count 1) and driving while suspended (Count 2), ORS 811.182(4).[1] Defendant filed a motion to suppress evidence of the implied-consent blood draw on August 20, 2019, which was 21 days before his scheduled September 10, 2019, trial date. At a pretrial hearing on the morning of September 10, the trial court granted defendant's motion to suppress the implied-consent blood draw, concluding that it was obtained in violation of defendant's right to counsel.

The state then requested that the trial scheduled for later that day be postponed so that it could subpoena the medical blood draw. The state explained that, while it should have subpoenaed the medical blood draw earlier, it had instead planned to rely on the implied-consent blood draw up until defendant filed his motion to suppress 21 days before trial. At that point, accounting for defendant's likely objections, the state did not believe it could successfully subpoena the medical blood draw in time for the existing trial date and did not attempt to do so. The state conceded that it "should have requested those" earlier but asked for a setover based on the trial court's suppression of the implied-consent blood draw.

When the trial court asked whether postponing the trial would prejudice him, defendant responded that he did not believe the state's explanation was "sufficient good cause" for a postponement and that the state should have subpoenaed the medical blood draw earlier. Defendant did not argue that the court should dismiss the indictment on that basis. Instead, he argued that he would be prejudiced by any delay because he wanted to proceed to trial that day and file a motion for judgment of acquittal. He expected that the trial court would grant the motion, given the lack of a

---

[1] Defendant does not challenge his conviction for driving while suspended, ORS 811.182(4), on appeal.

BAC in the record. Defendant also argued that if the trial were postponed, he would need to spend time and resources hiring an expert and litigating the state's subpoena.

After hearing from both parties, the trial court granted the state's motion to reset the trial date. The trial court recognized that "by taking away a substantial part of the [s]tate's case" through the grant of defendant's motion to suppress the implied-consent blood draw, the state had "to re-evaluate." The trial court found that there was no "other specific prejudice, other than the legal positioning of the parties" and determined that that was not "sufficient" to deny the motion. The trial court explained that the motion to suppress had been a "close call," and that it was "not readily apparent as you analyze everything as—as to how it comes out." The trial court reiterated that it was granting the motion because the suppression hearing had "substantially rearranged the position of the [s]tate."

The state then filed a motion requesting a subpoena for the medical blood draw, which the trial court granted over defendant's objection. Defendant thereafter filed a motion to suppress the medical blood draw. Defendant argued that hospital staff took state action that violated his right to privacy under the Fourth Amendment to the United States Constitution when they complied with ORS 676.260. That statute requires hospital staff to report a patient's elevated blood-alcohol level to law enforcement when a blood test is performed on a patient believed to be a driver involved in a car crash. The trial court denied defendant's motion to suppress.

The trial court also denied defendant's motion *in limine* seeking to exclude the medical blood draw, in which he argued, in part, that testimony from the state's expert witness failed to establish an adequate chain of custody to trace the blood draw back to defendant.

## MOTION TO POSTPONE

As described above, following the suppression of the implied-consent blood draw, the state requested a "setover" to allow it time to subpoena the medical blood draw. On appeal, defendant challenges the trial court's grant of that

request. We review the trial court's grant of a motion for continuance for abuse of discretion. *State v. Stull*, 281 Or App 662, 666, 386 P3d 122 (2016), *rev den*, 360 Or 752 (2017).

After granting the state's motion for continuance, defendant argues that the trial court erred in failing to dismiss the indictment with prejudice because the state failed to show "sufficient cause" for postponement under ORS 136.120. The state responds that defendant's arguments are not preserved because he did not move for dismissal under ORS 136.120. We agree with the state.

To preserve an error for appeal, a party must demonstrate that the question or issue was presented below with sufficient particularity to allow the trial court to rule on the argument and correct any error. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). One of the underlying purposes of the preservation requirement is to ensure that the opposing party and the trial court were given enough information to understand the argument and to have fairly responded to the argument below. *State v. Walker*, 350 Or 540, 552, 258 P3d 1228 (2011). Although raising a specific statute or source for a claimed position is not always necessary to preserve an argument, raising the particular issue "ordinarily is essential." *State v. McKinney/Shiffer*, 369 Or 325, 332, 505 P3d 946 (2022) (internal quotation marks omitted).

Given trial courts' expertise in managing the demands and practicalities of trial dockets, we have historically been reticent to second-guess the trial court's grant or denial of motions for postponement or continuance. *State v. Kindler*, 277 Or App 242, 250, 370 P3d 909 (2016). In reviewing for abuse of a trial court's discretion, we have been understanding of the broad and pragmatic range of legally correct choices. *Id.*; *see also State v. Johnson*, 304 Or App 78, 83, 466 P3d 710 (2020). That range depends on the particular circumstances of the case and the reasons presented to the trial court. *Stull*, 281 Or App at 667.

In some instances, following a trial court's denial of the state's motion to continue, a defendant will move for dismissal of the indictment under ORS 136.120(1), which provides:

"If the defendant appears at the time set for trial and the prosecuting attorney is not ready and does not show sufficient cause for postponing the trial, the court shall dismiss the accusatory instrument unless the court determines that dismissal is not in the public interest."

*See also State v. Shaw*, 338 Or 586, 595-96, 113 P3d 898 (2005) (detailing an instance where defendant moved for dismissal under ORS 136.120 following trial court's denial of state's motion for continuance); *State v. Sondenna*, 222 Or App 506, 509, 194 P3d 817 (2008) (same). On review of a trial court's decision whether to dismiss an indictment under ORS 136.120, we review whether the trial court erred as a matter of law in determining whether the state showed "sufficient cause" for postponing the trial, and we evaluate whether the trial court abused its discretion in determining whether dismissal was "in the public interest." *Shaw*, 338 Or at 608.

In this case, defendant did not move for dismissal of the indictment. Instead, he wanted to go to trial that day so that he could move for a judgment of acquittal, which he anticipated would be granted in light of the state's lack of evidence. An acquittal and a dismissal of the indictment result in legally distinct outcomes, and here, defendant asked for only one of them. Because the defendant never moved for dismissal, the trial court did not have an opportunity to consider the legal determinations it was required to make under ORS 136.120.

To be sure, defendant used the phrase "sufficient good cause" when he made his motion, which could be referring to the language in ORS 136.120. However, defendant's argument was focused on proceeding to trial, not having the indictment dismissed. We are unpersuaded that one party's motion for a continuance automatically raises the issue of whether to dismiss the indictment under ORS 136.120, and defendant has cited no cases that support that proposition. Defendant's argument that the trial court "erred when it concluded that the state had shown 'sufficient cause' for postponement under ORS 136.120" is therefore unpreserved.

To the extent that defendant additionally argues that the trial court abused its discretion in granting the

state's motion for a continuance, we find no abuse of discretion. The trial court weighed the state's reasoning regarding its failure to subpoena the medical blood draw at an earlier stage under the legal standard, including the state's concession that it should have subpoenaed the medical blood draw sooner. It also considered defendant's response that he would be prejudiced by a postponement because if the second blood draw was admitted, he would have to use resources to prepare for a trial and would be in a worse position for purposes of a motion for judgment of acquittal. The court then granted the state's motion, determining that its ruling on the motion-to-suppress was not obvious to predict and had "substantially rearranged" the state's position and that defendant would not suffer prejudice from a postponement other than from the inherent legal positioning of the parties. That decision based on those considerations was well within the range of legally correct discretionary choices. *See State v. Licari*, 261 Or App 805, 808, 322 P3d 568, *rev den*, 355 Or 880 (2014) ("Whether a denial of a continuance is improper depends on the particular circumstances of the case and the reasons presented to the court at the time the request is denied.") (internal quotation marks omitted)); *id.* ("If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion.") (internal quotation marks omitted).

We also disagree with defendant's argument that *State v. Fredinburg*, 257 Or App 473, 480, 308 P3d 208, *rev den*, 354 Or 490 (2013), stands for the proposition that motions for a continuance made after pretrial hearings and on the day set for trial are untimely as a matter of law. The precedent relied upon in *Fredinburg* instead concluded that, under the circumstances of that case, it was within the range of legally permissible options for the trial court to deny such a motion as untimely. *State v. Martinez*, 224 Or App 588, 593, 198 P3d 957 (2008), *rev den*, 346 Or 364 (2009).

Further, concluding that motions for continuance made on the day of trial are untimely as a matter of law

would be inconsistent with our precedent and the realities of trial practice, which sometimes necessitate a last-minute continuance. *See State v. Read*, 308 Or App 164, 166, 480 P3d 332 (2020) (surprise unavailability of witness); *Johnson*, 304 Or App at 84 (defendant did not expect to go to trial that day and did not have physical access to her case notes); *State v. Hickey*, 79 Or App 200, 203-04, 717 P2d 1287 (1986) (defendant's counsel's briefcase stolen the night before trial).

For those reasons, the trial court did not exceed the bounds of legally permissible discretion in granting the state's motion for a continuance.

## ADEQUATE CHAIN OF CUSTODY

In his third assignment of error, defendant argues that the trial court erred in denying defendant's motion *in limine*, because the state did not establish a chain of custody that linked the medical blood draw to him. The state concedes error. We agree with defendant's argument and accept the state's concession.

Determining the adequacy of the foundation required to establish a chain of custody rests within the discretion of the trial court. *State v. Summers*, 277 Or App 412, 421, 371 P3d 1223 (2016). We therefore review the trial court's ruling regarding the adequacy of the medical blood draw's foundation for abuse of discretion. *Id.*

Under OEC 901(1), the requirement of authentication as to a piece of evidence "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." That rule sets forward the well-accepted requirement that whenever a piece of evidence is offered, there must be certain minimum assurances that the evidence is "what it purports to be, what it is offered as being, and what its value depends on." *State v. Sassarini*, 300 Or App 106, 123, 452 P3d 457 (2019) (internal quotation marks and brackets omitted). The requirements for authentication depend on the particular circumstances and the nature of the evidence that is offered. *Id.* at 126. In the context of a DUII case involving a blood draw, we have stated that a showing that the blood sample was a valid blood draw

from the defendant involves laying a traditional chain of custody foundation. *State v. Owens*, 207 Or App 31, 41, 139 P3d 984 (2006), *rev den*, 342 Or 503 (2007).

This case is like *State v. Martin*, 307 Or App 396, 404, 477 P3d 452 (2020), in which we determined that medical reports containing results of the defendant's blood-alcohol test were not self-authenticating. Here, the state concedes that testimony from Jones, a toxicology supervisor for the Oregon State Police Forensic Lab, who testified broadly about the different ways to analyze blood-alcohol content, was not sufficient to establish the authenticity of the medical blood draw. Jones expressly testified that he did not know the medical blood draw's chain of custody, did not know who conducted the medical blood draw or whether the test was performed properly, and did not have an opinion as an expert on the accuracy of any test performed.

In short, the state did not present a witness that could testify as to the medical blood draw test's chain of custody or properly authenticate it. Nor did the medical blood draw itself provide sufficient support to overcome the challenge to the chain of custody. Based on this record the trial court could not determine that there was a reasonable probability that the medical blood draw results traced back to defendant's blood. The trial court erred in admitting the medical blood draw over defendant's chain of custody objection.[2]

We further conclude that the admission of the medical blood draw was not harmless. We must affirm the conviction for DUII if we conclude that there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, the state's case against defendant depended entirely on defendant's elevated BAC as reported in the medical blood draw; there was no other evidence of his intoxication. As a result, the

---

[2] To the extent that defendant argues that the state also had to fulfill the foundational standards for "scientific" evidence under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995), that argument is foreclosed by *State v. Helgeson*, 220 Or App 285, 293, 185 P3d 545 (2008). Defendant does not present an argument on appeal that our decision in *Helgeson* was plainly wrong, and we therefore decline to undertake that analysis. *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015).

erroneous admission of the medical blood draw had more than a "little likelihood" of affecting the verdict.

We therefore agree with the parties that because the trial court erroneously admitted the medical blood draw we must reverse and remand the judgment. As the court did in *Martin*, we leave it to the trial court to determine the appropriate nature of the proceedings on remand. *See Martin*, 307 Or App at 405 (reaching the same result).[3]

## FOURTH AMENDMENT

In his second assignment of error, defendant argues that the trial court erred in denying his motion to suppress the results of his medical blood draw because hospital staff's disclosure of his BAC under the mandatory reporting statute, ORS 676.260, violated his right to privacy under the Fourth Amendment to the United States Constitution.[4] *See Kyllo v. United States*, 533 US 27, 33, 121 S Ct 2038, 150 L Ed 2d 94 (2001) (A "Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."). Because that issue is likely to arise on remand, we reach and address the merits of that legal issue. *State v. Savage*, 305 Or App 339, 341-42, 470 P3d 387 (2020). We review the trial court's denial of a motion to suppress for errors of law. *State v. Bistrika*, 262 Or App 385, 392, 324 P3d 584 (2014).

The mandatory reporting statute at issue, ORS 676.260(1), provides:

> "A health care facility that provides medical care immediately after a motor vehicle accident to a person reasonably believed to be the operator of a motor vehicle involved in the accident shall notify any law enforcement officer who is at the health care facility and is acting in an official capacity in relation to the motor vehicle accident if the

---

[3] Separately, defendant also contends that the blood-alcohol hospital records were hearsay and violated his right of confrontation under Article I, section 11, of the Oregon Constitution. Because we are reversing and remanding on subconstitutional grounds and because the issue may arise on a different record on remand, we do not reach defendant's constitutional argument.

[4] The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ***."

health care facility becomes aware, as a result of any blood test performed in the court of that treatment, that:

"(a)   The person's blood alcohol level meets or exceeds the percent specified in ORS 813.010."

Under the limited circumstances prescribed by that mandatory reporting statute—where a blood test performed in the course of medical treatment on a person believed to have been driving in a car crash reveals an elevated blood-alcohol level—we have concluded that individuals do not have a reasonable expectation of privacy in their BAC test results under the Fourth Amendment. *Fincher*, 303 Or App at 166.

In *Miller*, we noted that although the United States Supreme Court "may have recognized a general expectation of privacy in medical test results" in *Ferguson v. City of Charleston*, 532 US 67, 121 S Ct 1281, 149 L Ed 2d 205 (2001), the Court also repeatedly emphasized that it was not addressing compliance with mandatory reporting statutes and that "the existence of such laws might lead a patient to expect that members of the hospital staff might turn over evidence acquired in the course of treatment to which the patient had consented[.]" *Miller*, 284 Or App at 828 (quoting *Ferguson*, 532 US at 78 n 13). In other words, *Miller* relied on the Court's reasoning that the existence of mandatory reporting statutes themselves suggests that society, as expressed through its representatives in the legislature, does not accept as reasonable an expectation of privacy in information subject to mandatory reporting. Where the defendant in *Miller* did not address why the existence of ORS 676.260(1) does not eliminate any expectation of privacy in his BAC test result, we declined to address any contrary argument. *Id.* at 832. And, assuming without deciding that the hospital staff's compliance with ORS 676.260(1) constituted state action, we concluded that the staff's disclosure did not implicate a protected privacy interest under the Fourth Amendment. *Id.* at 833.

Defendant attempts to distinguish this case from *Miller*, as reaffirmed in *Fincher*, in three different ways. We find none of them persuasive.

First, defendant argues that this case is factually distinguishable from *Miller* and *Fincher* because defendant in this case argues that he did not consent to a blood draw for criminal investigatory purposes. But our decisions in *Miller* and *Fincher* were also premised on an understanding that the defendants' blood was drawn during the course of medical treatment, unrelated to a criminal investigation, and that those defendants also did not preemptively consent to their blood test results being used for criminal investigatory purposes. *Fincher*, 303 Or App at 166 (blood draw taken for medical purposes at hospital after collision); *Miller*, 284 Or App at 821 (defendant expressly rejected officer's secondary request for blood draw). The medical blood draw at issue here does not differ factually from those considered in *Miller* and *Fincher*.

Second, defendant argues that the Fourth Amendment analysis regarding whether defendant has a privacy interest in his blood-alcohol test results under the circumstances described in ORS 676.260, as explained in *Miller*, has changed in light of the Supreme Court's decision in *Carpenter v. United States*, 585 US ___, 138 S Ct 2206, 201 L Ed 2d 507 (2018).

As explained in *Carpenter*, the Fourth Amendment protects against physical intrusions into constitutionally protected areas and protects "certain expectations of privacy." 585 US at ___, 138 S Ct at 2213. A government intrusion amounts to a search when a government actor violates an individual's subjective expectation of privacy, and that expectation of privacy is also one that society is prepared to recognize as reasonable.[5] *Id.* Under what is commonly referred to as the third-party doctrine, however, the Court

---

[5] As in *Miller*, 284 Or App at 823, we assume without deciding that the hospital's disclosure in compliance with ORS 676.260(1) was state action, and we do not address that issue. We note, however, that the issue is not settled. *United States v. Rosenow*, 33 F4th 529 (9th Cir 2022) ("Our caselaw is clear that a private actor does not become a government agent simply by complying with a mandatory reporting statute."). Defendant also does not fully address how a conclusion that complying with ORS 676.260 constitutes state action might affect other mandatory reporting statutes. *See, e.g.*, ORS 124.060 (mandatory reporting of elder abuse); ORS 419B.010 (mandatory reporting of child abuse); ORS 430.765 (mandatory reporting of abuse of an adult); ORS 339.372(3)(B) (mandatory reporting of sexual abuse of a student); ORS 707.735 (duty of banking institution to report criminal activity).

has consistently held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 US 735, 743-44, 99 S Ct 2577, 61 L Ed 2d 220 (1979) (holding that the defendant had no privacy interest in phone numbers dialed on his home phone that he necessarily shared with his phone company); *United States v. Miller*, 425 US 435, 442-43, 96 S Ct 1619, 48 L Ed 2d 71 (1976) (holding that the defendant had no privacy interest in banking records shared with his bank).

In *Carpenter*, the Court "decline[d] to extend *Smith* and *Miller*" and the third-party doctrine to cover 127 days' worth of an individual's cell-site location information (CSLI) retrieved from his cellphone company. *Carpenter*, 585 US at ___, 138 S Ct at 2217. The Court recognized that the government's warrantless request for CSLI records implicated two lines of cases regarding the privacy interest at issue. *Id.* at 2214-15. First, the Court drew upon its long line of cases addressing a person's expectation of privacy in his physical location and movements. *Id.* at 2215. Second, the Court explained that the request for CSLI also implicated the third-party doctrine, under which it reiterated that "the Government is typically free to obtain such information from the recipient without triggering Fourth Amendment protections." *Id.* at 2216. Analyzing the defendant's privacy interest in his CSLI data at the intersection of those two lines of cases, the Court held that given the uniquely personal nature of the location information revealed through CSLI, the fact that the information was held by a third party did not negate the defendant's privacy interest in that data. *Id.* at 2217. The Court established that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured by CSLI, and that CSLI represented the "rare case where the suspect has a legitimate privacy interest in records held by a third party." *Id.* at 2222.

Defendant argues that, as in *Carpenter*, his privacy interest in the results of the medical blood draw was not subject to the third-party doctrine due to the "deeply revealing nature" of the information disclosed by the medical blood draw.

*Carpenter* is distinguishable. Defendant draws upon the emphasis on CSLI's underlying nature in *Carpenter*, arguing that his medical records reveal information of the same intensely personal nature as CSLI. *Carpenter*'s emphasis on the underlying nature of CSLI, however, was done in an intentionally "narrow" manner so as to "not disturb the application of *Smith* or *Miller*." 585 US at ___, 138 S Ct at 2220. *Carpenter* did not purport to revolutionize the third-party doctrine, but instead relied on a line of precedent establishing a right to privacy in an individual's physical movements to establish a specific instance where an individual retained a privacy interest in GPS information maintained by a third party.

There is no such line of precedent supporting an expectation of privacy in the results of defendant's medical blood draw. Defendant's medical blood draw instead implicates case law establishing that an individual's right to privacy in medical records is not absolute. *Ferguson*, 532 US at 84 n 24; *Miller*, 284 Or App at 831-32; *see also Whalen v. Roe*, 429 US 589, 602, 97 S Ct 869, 51 L Ed 2d 64 (1977) (explaining that "disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient"). In addition to being unsupported by precedent, the specific disclosure of a BAC test result contemplated by ORS 676.260 is limited in nature and circumstance and differs significantly from months of GPS data revealing an individual's every physical movement. Information disclosed pursuant to that reporting requirement is limited to a specific test result in circumstances where the patient is believed to have been drinking and driving. Where the underlying nature of the relevant information and implicated precedent do not suggest that *Carpenter*'s "narrow" ruling encompasses a privacy interest in the information subject to mandatory reporting at issue here, *Carpenter* does not affect our analysis in *Miller*.

Third, defendant asserts that his arguments are distinct from those made by the defendants in *Miller* and *Fincher* because defendant argues that ORS 676.260, as a state statute, cannot act as a limitation on a privacy right

protected by the Fourth Amendment. Although defendant is correct that, generally, state laws cannot negate a recognized privacy interest under the Fourth Amendment, that argument does not address whether the existence of ORS 676.260 helps reflect society's understanding that such an expectation of privacy is unreasonable in the first instance. *See Miller*, 425 US at 442-43 (explaining that legislation (the Bank Secrecy Act) can reflect the legislature's assumption that there was no privacy interest in that information). The defendant's arguments in *Miller* left that question unaddressed, as do defendant's arguments here. *Miller*, 284 Or App at 831-32. Defendant's invocation of the general principle that state law cannot supplant constitutional standards therefore does not affect the controlling nature of *Miller* on this case.

Thus, as we concluded in *Miller*, defendant did not have a reasonable expectation of privacy in the results of his medical blood draw under the limited circumstances addressed by ORS 676.260, and the trial court did not err in denying his motion to suppress the medical blood draw.

## CONCLUSION

In sum, the trial court did not abuse its discretion in granting the state's motion for a continuance. The trial court did, however, err in denying defendant's motion *in limine* to exclude the medical blood draw based on defendant's objection to the inadequate chain of custody, which was not harmless with respect to the DUII conviction. Finally, as explained in *Miller*, which controls in this case, defendant does not have a privacy interest in his blood-alcohol test results under the Fourth Amendment, and the trial court did not err in denying defendant's motion to suppress on that basis. We therefore, as in *Martin*, reverse and remand for further proceedings.

Conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed.